Case 3:19-cv-01098   Document 1   Filed 09/24/19   Page 1 of 9 PageID 1

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES EQUAL
EMPLOYMENT OPPORTUNITY
COMMISSION,

        CIVIL ACTION NO.

    Plaintiff,

        C O M P L A I N T
        JURY TRIAL DEMAND

v.

RING POWER CORPORATION,
    Defendant.

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of race and to provide appropriate relief to Charging Party Shakeem Petersen ("Petersen"). As alleged with greater particularity below, Defendant Ring Power Corporation ("Ring Power") discriminated against Petersen in the terms and condition of his employment, and subjected him to a hostile work environment, because of his race, Black.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3) ("Title VII") and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

1

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Middle District of Florida.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

4. At all material times, Ring Power has continuously been doing business in the State of Florida and the City of St. Augustine and has continuously had at least 15 employees.

5. At all relevant times, Ring Power has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## ADMINISTRATIVE PROCEDURES

6. More than thirty days prior to the institution of this lawsuit, Petersen filed a charge of discrimination with the Commission alleging violations of Title VII by Ring Power.

7. Prior to the institution of this lawsuit, the Commission issued a Letter of Determination indicating that it found reasonable cause to believe that Ring Power discriminated against Petersen in violation of Title VII because of Petersen's race.

8. Prior to the institution of this lawsuit, the Commission attempted to effect Ring Power's voluntary compliance with Title VII through informal methods of conciliation to remedy the practices found unlawful.

9. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF FACTS

10. Ring Power is a construction and heavy equipment dealer and service provider with more than 24 branch locations and over 2,000 employees.

11. On approximately July 22, 2013, Ring Power hired Petersen, a naval veteran technician, as an Electrical Power Generating Shop Technician II to work at Ring Power's St. Augustine headquarters.

12. Petersen applied for a position with Ring Power located at the St. Augustine location at a job fair in Chicago, IL.

13. During the relevant time period, Petersen was one of a few Black employees at Ring Power's St. Augustine headquarters out of a workforce there of approximately 400-500 employees.

14. Throughout his employment, Petersen was the only Black technician in his department.

15. Petersen's supervisor was Joshua Carlson ("Carlson"), who is White.

16. Throughout his employment with Ring Power, Petersen either heard or knew that Carlson made the following comments:

   a. "They hired a new monkey porch nigger [Petersen], but he won't be here for long."

   b. "I'm gonna get that nigger [Petersen] out of here."

   c. "Look at that monkey baby," referring to a photo of a Black baby.

   d. "I'm gonna put a banana on that picture," referring to a photo of a Black baby.

   e. "You are in charge of the nigger [Petersen] now. Try to get him to leave."

      f. "Don't lend that nigger [Petersen] any of your tools."

      g. "All that nigger [Petersen] is good for is cleaning."

      h. "All niggers are good for is cleaning."

      i. "Niggers don't know what they are doing."

      j. "Niggers are lazy.

      k. "Try to get that nigger [Petersen] to quit."

17. Because of Petersen's race, Carlson routinely assigned Petersen janitorial work assignments such as sweeping, mopping and buffing Ring Power's shop's floors throughout Petersen's employment at Ring Power. According to Carlson, "all niggers are good for is cleaning."

18. Unlike Petersen, non-Black apprentices were routinely entitled to train in the field and perform technical tasks, such as equipment repair, battery testing, diagnostics, etc.

19. Technicians who were not Black, in other words all other technicians, were treated more favorably than Petersen, the only Black technician in the department because of their race. For instance:

      a. Because of Petersen's race, Carlson recommended to his supervisor that Petersen, who Carlson had referred to as the "new monkey porch nigger" be terminated from his Technician position. Such termination recommendations were not made for other newly-hired non-Black technicians.

      b. Petersen objected to Carlson's termination recommendation to Carlson's supervisor. Instead, because of Carlson's termination recommendation, Carlson's supervisor demoted Petersen from his technician position to an

4

      apprentice position.  Newly-hired non-Black technicians were not demoted to apprentice positions.

c.  Petersen's salary decreased from $18.50/hour ($38,480/year) to $14.00/hour ($21,120/year).  Non-Black technicians' salaries were not so decreased.

d.  Upon graduation from the apprentice program, non-Black technicians were thereafter routinely given technical work assignments.  However, upon Petersen's graduation from the apprentice program, Peterson was still relegated to janitorial work assignments such as sweeping, mopping and buffing Ring Power's shop's floors.

e.  Non-Black technicians were given interesting and challenging work assignments.  Petersen was given menial, humiliating and degrading work assignments.  Non-Black technicians routinely joked about Petersen being nothing more than a maid—not a technician.

f.  Non-Black technicians' requests for overtime were routinely approved. Petersen's requests for overtime were not approved.

20.  A Technician's pay was based on performance evaluations which considered qualitative and quantitative work experience and past performance.  As a result, Petersen's work assignments and compensation were inextricably intertwined.

21.  Ring Power's continued refusal to give Petersen technical qualitative and quantitative work experience because of his race precluded him from earning pay comparable to the non-Black technicians.

5

22. Because Petersen received the most menial assignments of any technician in the department, he consistently received the lowest pay of any technician in his department.

23. Because of his race, Petersen was the lowest paid Technician at Ring Power among other Technicians in his department.

24. Petersen made complaints to managers and human resources personnel during his employment, but Ring Power did not take prompt corrective action in response to his complaints.

25. Ring Power otherwise knew or should have known about discrimination about Petersen but Ring Power did not take prompt corrective action in response to his complaints.

26. On or about October 9, 2017, Petersen notified the company he was leaving because of his supervisor and being called a "nigger." A manager told Petersen that someone would contact him about his report, but no one ever did Petersen's resignation became effective on October 19, 2017.

27. Because of Ring Power's unlawful conduct, Petersen was harmed and suffered damages.

## STATEMENT OF CLAIMS

### Count I

28. Paragraphs 10-27 are incorporated herein.

29. Ring Power discriminated against Petersen in the terms and conditions of his employment because of his race, Black, in violation of Title VII.

30. The effect of the practices complained of in Paragraphs 10-27 has been to deprive Petersen of equal employment opportunities because of his race.

31. The unlawful employment practices complained of in Paragraphs 10-27 were intentionally done with malice and/or reckless indifference to Petersen's federally protected rights.

<u>Count II</u>

32.     Paragraphs 10-27 are incorporated herein.

33.     Ring Power subjected Petersen to a hostile work environment based on his race, Black, in violation of Title VII.

34.     The effect of the practices complained of in Paragraphs 10-27 has been to deprive Petersen of equal employment opportunities because of his race.

35.     The unlawful employment practices complained of in Paragraphs 10-27 were intentionally done with malice and/or reckless indifference to Petersen's federally protected rights.

<u>PRAYER FOR RELIEF</u>

Wherefore, the Commission respectfully requests that this Court:

A.      Grant a permanent injunction enjoining Ring Power, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from engaging in race-based discrimination;

B.      Order Ring Power to institute and carry out policies, practices, and programs which provide equal employment opportunities for Black employees which eradicate the effects of its past and present unlawful employment practices;

C.      Order Ring Power to make Petersen whole by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices;

D.      Order Ring Power to make Petersen whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial;

  E. Order Ring Power to make Petersen whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial;

  F. Order Ring Power to pay Petersen punitive damages for its intentional, malicious and reckless conduct, as described above, in amounts to be determined at trial;

  G. Grant a judgment in the Commission's favor; and

  H. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Dated:  September 24, 2019

            Respectfully Submitted,

            JAMES L. LEE
            Deputy General Counsel

            GWENDOLYN YOUNG REAMS
            Associate General Counsel
            U.S. Equal Employment
            Opportunity Commission
            131 M Street, N.E.
            Washington, D.C. 20507

            ROBERT WEISBERG
            Regional Attorney
            Florida Bar No: 285676
            BEATRIZ BISCARDI ANDRE
            Supervisory Trial Attorney
            New York Bar No: 4394599
            Equal Employment Opportunity
            Commission
            Miami District Office
            Miami Tower
            100 S.E. 2nd Street, Suite 1500

Miami, Florida 33131
Tel: (786)-648-5806
Beatriz.andre@eeoc.gov

*/s/* Oshia Gainer Banks
OSHIA GAINER BANKS
TRIAL COUNSEL
Lead Attorney for Plaintiff, EEOC
Florida Bar No. 037022
U.S. Equal Employment Opportunity Commission
Miami District Office
Miami Tower
100 S.E. 2nd Street, Suite 1500
Miami, Florida 33131
Tel: (786) 648-5861
Oshia.Banks@eeoc.gov